# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **AARON SMITH**, individually and on behalf of all similarly situated individuals, | |
| Plaintiff, | Case No. 2:18-cv-10501-DML-RSW |
| v. | Hon. David M. Lawson |
| | Magistrate Judge R. Steven Whalen |
| **SILVERSTAR DELIVERY, LTD., AMAZON.COM, LLC**, and **AMAZON.COM SERVICES, INC.**, | |
| Defendants. | |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Named Plaintiff (as hereinafter defined) and the FLSA Collective of individuals (as hereinafter defined), and Defendants Silverstar, LTD. ("Silverstar"), Amazon.com, LLC, and Amazon.com Services, Inc. (collectively, "Amazon") (hereinafter "Defendants").

## RECITALS

WHEREAS Plaintiff Aaron Smith, a former employee at Silverstar, filed the case titled *Aaron Smith, individually and on behalf of all similarly situated individuals v. Silverstar, LTD., Amazon.com, LLC, and Amazon.com Services, Inc.,* Case No. 2:18-cv-10501-DML-RSW, currently pending before the United States District Court for the Eastern District of Michigan, alleging claims of unpaid overtime wages and improper recordkeeping on behalf of himself and those similarly situated under the Fair Labor Standards Act, 29 U.S.C.§ 201, et seq. ("FLSA");

WHEREAS, Plaintiff has sought the recovery of, among other things, minimum wages, overtime wages, straight-time wages, liquidated damages, attorneys' fees, and costs;

WHEREAS, Defendants deny and continue to deny all of the allegations made by Plaintiff, and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action alleged, or that any claims asserted by Plaintiff may proceed on a class or collective action basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, including that Amazon is a joint employer of Plaintiff or anyone on whose behalf Plaintiff has attempted to bring claims, or that any claims alleged may proceed on a class or collective action basis, Defendants have agreed to

settle the claims on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against litigation;

WHEREAS, Class Counsel (as hereinafter defined) has interviewed Plaintiff and other FLSA Collective Members and reviewed and analyzed documents produced by Defendants;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants, and the impact of this Agreement on Plaintiff and the FLSA Collective;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of litigation with respect to certain claims, including the possibility that any litigation might result in a recovery that is less favorable to the FLSA Collective, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the FLSA Collective;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the claims at issue on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1 **Agreement**. "Agreement" shall mean this Joint Stipulation of Settlement and Release, and all exhibits.

1.2 **Applicable Hours.** "Applicable Hours" shall mean, as reflected on Silverstar's internal records, any hours an FLSA Collective Member of Silverstar worked as a delivery driver delivering packages to Amazon's customers in Michigan between three years from the date of when the individual opted into the lawsuit or October 6, 2016, whichever date is earlier, through January 24, 2018 and for which his or her employer did not pay overtime wages for the workweek worked.

1.3 **Claimant**. "Claimant" shall mean any FLSA Collective Member who timely submits a valid and complete Consent to Join Form on or before the Consent to Join Deadline in accordance with Section 2.3 of this Agreement, or a FLSA Collective Member whose Consent to Join Form is accepted in accordance with Section 3.4 below.

1.4 **Claims Administrator**. "Claims Administrator" shall mean the entity selected by the Parties to provide notice to the Collective and administer payment of the settlement to FLSA Collective Members. The Parties have preliminarily identified RG/2 Claims Administration LLC to act as the Claims Administrator.

1.5 **Class Counsel**. "Class Counsel" shall mean Laura Reasons, Amy Keller, Kenneth Abbarno, and Mark Abramowitz of DiCello Levitt & Casey LLC.

1.6 **Complaint**. "Complaint" shall mean the First Amended Collective Action Complaint that Plaintiff filed in the Litigation (docket entry 10).

1.7 **Consent to Join Deadline**. "Consent to Join Deadline" shall mean the date that is sixty (60) days after the Claims Administrator mails the Consent to Join Forms to FLSA Collective Members pursuant to Section 2.3 of this Agreement. If the Claims Administrator re-mails the Consent to Join Form to any individual pursuant to Section 2.3(C) of this Agreement because the first mailing was returned as undeliverable, the Consent to Join Deadline for such individuals shall be the later of (a) sixty (60) days after the original mailing to all Collective Members, or (b) thirty-five (35) days after the re-mailing. If the Consent to Join Deadline falls on a Sunday or holiday, the deadline to return Consent to Join Forms will be the next business day that is not a Sunday or holiday.

1.8 **Consent to Join Form**. "Consent to Join Form" shall mean the form provided to FLSA Collective Members to submit in order to obtain their Individual Settlement Amount pursuant to this Agreement. The Consent to Join Form shall be in the form attached hereto as Exhibit C.

1.9 **Consent to Join Period**. "Consent to Join Period" shall mean the period of time in between the Administrator's mailing of the Consent to Join Forms and the Consent to Join Deadline.

1.10 **Court**. "Court" shall mean the U.S. District Court for the Eastern District of Michigan.

1.11 **Covered Period**. "Covered Period" shall mean October 6, 2016 (or three years before the date when an individual opted into this Litigation, whichever is earlier) to January 24, 2018.

1.12 **Defendants**. "Defendants" shall mean Silverstar and Amazon, the Defendants in this action.

1.13 **Defense Counsel**. "Defense Counsel" shall mean Stephanie L. Sweitzer, and Meredith E. Riccio of Morgan, Lewis & Bockius LLP, and Daniel L. Villaire of Howard & Howard Attorneys.

1.14 **Effective Date**. The "Effective Date" shall mean the date on which the Court enters the Order Granting Approval and Dismissing the Action.

1.15 **Escrow Account**. "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Claims Administrator.

1.16 **Final Individual Settlement Amount**. "Final Individual Settlement Amount" shall mean the final gross amount (not including any Service Award amount) sent to Plaintiff or any Claimant under this Agreement.

1.17 **FLSA Collective; FLSA Collective Member**. "FLSA Collective" shall mean individuals employed by Silverstar as delivery drivers who delivered packages to Amazon's

3

customers in Michigan and who worked during the Covered Period. A member of the FLSA Collective is a "FLSA Collective Member."

**1.18**   **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the amount offered to each FLSA Collective Member pursuant to Section 3 of this Agreement.

**1.19**   **Litigation**. "Litigation" shall mean the case titled *Smith v. Silverstar, LTD, et al.,* Case No. 2:18-cv-10501-DML-RSW, pending in the U.S. District Court for the Eastern District of Michigan.

**1.20**   **Maximum Settlement Amount**. "Maximum Settlement Amount" shall have the meaning defined in Section 3.1 below.

**1.21**   **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for court-approved attorneys' fees and costs as described in Section 3.2 and court-approved service payments to Plaintiff as described in Section 3.3. The Net Settlement Fund shall be used to pay all amounts due to Claimants.

**1.22**   **Order Granting Approval and Dismissing the Action**. "Order Granting Approval and Dismissing the Action Without Prejudice, to Automatically Convert to With Prejudice" or "Order Granting Approval" shall mean the Order entered by the Court approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the FLSA Collective Members, and the time period for opt-ins, as well as dismissing the case without prejudice, to automatically convert to a with prejudice dismissal within six (6) months following the entry of the Order Granting Approval. A proposed version of the Order Granting Approval shall be submitted to the Court in the form attached hereto as Exhibit A.

**1.23**   **Parties**. "Parties" shall refer to the Plaintiff and Defendants.

**1.24**   **Plaintiff**. "Plaintiff" shall mean Aaron Smith, and shall also include any and all of his representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

**1.25**   **Releasees**. "Releasees" shall mean the Defendants and their present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

**1.26**   **Settlement**. The "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

1.27 **Settlement Administration Expenses**. "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator in effectuating the Settlement.  They include the Claims Administrator's invoices, the costs of administering the Escrow Account, and any other cost or expense other than the Final Individual Settlement Amounts, Attorneys' Fees and Costs as awarded by the Court, and Plaintiff's Service Award, as awarded by the Court.  Defendants will be solely responsible for paying the Settlement Administration Expenses, which will be paid by Defendants separate and apart from the Settlement Fund or Net Settlement Fund.  The Settlement Administration Expenses will not come out of the Settlement Fund or Net Settlement Fund.

1.28 **Settlement Fund**. The "Settlement Fund" shall be the settlement fund created by the payment by the Defendants of up to the Maximum Settlement Amount of One Hundred Fifty Thousand Dollars ($150,000).

1.29 **Unclaimed Funds**. "Unclaimed Funds" shall mean the aggregate amount of Individual Settlement Amounts not claimed by FLSA Collective Members in a timely and valid manner pursuant to Section 2.3 of this Agreement, or not otherwise accepted pursuant to Section 3.4.

2. **APPROVAL AND COLLECTIVE NOTICE**

2.0 **Stipulation to Certification.** The Parties stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims encompassed by this Settlement pursuant to the FLSA. If for any reason the Court does not approve this stipulation or does not enter an Order Granting Approval, or if this Settlement is lawfully terminated for any other reason, the preliminary and conditional certification of the FLSA Collective shall become null and void. The fact of certification shall not be cited to, used, or admissible in any other judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.  If this Agreement is revoked at any time, pursuant to Sections 2.6 and/or 2.7 of this Agreement, or otherwise, Defendants agree that they will cooperate with Plaintiff to move the Court for an order resetting the remaining deadlines, including the deadline for Plaintiff's motion for conditional certification.

2.1 **Retention of Claims Administrator**.  The parties have identified RG/2 Claims Administration LLC to act as the Claims Administrator, and Defendants, as stated herein, shall pay the Claims Administrator's expenses and fees.  The Claims Administrator shall be responsible for the claims administration process and distributions to Claimants as provided herein, as well as for making any mailings and performing other services as required under this Agreement. The Claims Administrator will provide equal access and reporting regarding the settlement to all Parties.  The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement.

2.2 **Final Order and Approval by the Court**. As soon as practicable and without undue delay, and no later than November 15, 2018, the Parties agree to jointly seek the Court's approval of the terms of this Agreement and to dismiss the Litigation without prejudice,

to automatically convert to a with prejudice dismissal within six (6) months following the entry of the Order Granting Approval.

(A)     A condition precedent to this Agreement is the Court's approval of the Order Granting Approval, in substantially the same form as Exhibit A. The Parties agree to jointly seek approval of the Settlement by filing with the Court a Motion for Approval of Settlement.

(B)     The parties shall provide to the Court for review and approval this Agreement, with exhibits, (i) the proposed Order Granting Approval and Dismissing the Action Without Prejudice; (ii) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members attached hereto as Exhibit B; (iii) the Consent to Join Form (in the case of the FLSA Collective Members) attached hereto as Exhibit C, and such other information as the Court may request. This submission to the Court will also include stipulations for purposes of settlement only that the case is certified as a collective action.

## 2.3     Collective Notice and FLSA Collective Member Consent to Join Forms

(A)     Within thirty (30) days after the Order Granting Approval, or as soon thereafter as practicable, Silverstar will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names, last known addresses, e-mail addresses, and the Applicable Hours worked by all FLSA Collective Members ("Notice List"). Prior to the provision of the Notice List, the Claims Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Notice List except as is necessary to perform the services required of the Claims Administrator under this Stipulation.  Class Counsel agrees to use the Notice List only for purposes of monitoring and ensuring compliance with this Agreement and will not disclose it to Plaintiff or otherwise.  The complete Notice List and the data and information contained in the Notice List shall not be disclosed to anyone else external to the Claims Administrator or Class Counsel without the written consent of Defendants. The Claims Administrator may also disclose to Class Counsel the names, last known addresses, e-mail addresses, and the Applicable Hours worked by Plaintiff and Claimants.  Nothing in this paragraph shall prevent Class Counsel from communicating with FLSA Collective Members before notice is mailed or from communicating with any Claimant at any time.

(B)     Within five (5) calendar days after receiving the Notice List, or as soon thereafter as practicable, the Claims Administrator shall calculate the estimated Individual Settlement Amounts of all FLSA Collective Members.  The Claims Administrator shall provide the calculations and Individual Settlement Amounts to Class Counsel.  Class Counsel shall bring any disputes in the calculations to the attention of Defense Counsel and the Claims Administrator within three (3) business days of receipt of the calculations and amounts.  The Parties will endeavor to resolve and agree upon the calculations and estimated Individual Settlement Amounts.  If they cannot resolve any such disputes, the calculation of

the estimated Individual Settlement Amounts will be determined by David Calzone, the Mediator, acting as arbitrator.

(C)     Within ten (10) calendar days after receiving the Notice List, or as soon thereafter as practicable, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, using each member's last known address as provided by Silverstar and email using the last-known email addresses as provided by Silverstar: (i) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members; (ii) a Consent to Join Form; and (iii) instructions to request a Consent to Join Form which may be completed electronically through Docusign or another similar application. The Claims Administrator shall give the Parties two (2) business days' notice before the Notices and Consent to Join Forms are sent out. The Notices/Consent to Join Forms shall inform all FLSA Collective Members of their rights under this Agreement, of the formulas to calculate their estimated Individual Settlement Amounts, and of the amounts of their estimated Individual Settlement Amounts. The Claims Administrator shall attempt to obtain the correct address of any FLSA Collective Members for whom the Notice is returned by the post office as undeliverable and shall attempt one re-mailing as described below. Defense Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator as is necessary to the administration of this Settlement.

(D)     If any Notices and Consent to Join Forms are returned as undeliverable during the Consent to Join Period, the Claims Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service. If no such forwarding address is provided, the Claims Administrator shall perform one skip trace during the Consent to Join Period using that FLSA Collective Member's social security number to attempt to obtain the most recent address for the FLSA Collective Member.

(E)     Within three (3) business days of when the Claims Administrator re-mails the Notice to any FLSA Collective Members for whom the Notice is returned as undeliverable, the Claims Administrator will inform Class Counsel that the Notice was returned undeliverable, and of the original mailing address(es) and the re-mailing address(es).  Class Counsel may, at their sole discretion, attempt to locate additional contact information for any such FLSA Collective Member and may attempt to provide Notice to any such FLSA Collective Member through mail and/or e-mail.

(F)     The Claims Administrator shall, within ten (10) calendar days after the first mailing of Notice, notify Class Counsel and Defense Counsel of the precise end date of the Consent to Join Period.

(G)     The Claims Administrator shall notify FLSA Collective Members who submit deficient Consent to Join Forms ("Deficient Claimant(s)") of the deficiency within five (5) business days of receipt. Deficient Claimants will have the longer of fifteen (15) days from notification of a deficient Consent to Join Form or the

Consent to Join Deadline to cure said deficiencies. Deficiencies that are not cured in accordance with the preceding sentence shall render the Deficient Claimant's claim waived, unless the deficiency is excused and the Claim Form accepted in accordance with Section 3.4.  Within five (5) business days of receipt of a deficient Consent to Join Form, the Claims Administrator will also inform Class Counsel of the identify and contact information of any FLSA Collective Members who submit deficient Consent to Join Forms.  Class Counsel may, at their sole discretion contact any such FLSA Collective Members for the purpose of assisting them to cure said deficiency

(H)     Except for Consent to Join Forms accepted in accordance with Section 3.4, each FLSA Collective Member must submit his/her completed Consent to Join Form to the Claims Administrator no later than the Consent to Join Deadline to be eligible for his or her Final Individual Settlement Amount. The postmark date or email date of the Consent to Join Form mailed by the Claims Administrator to the FLSA Collective Member and the postmark date or date of signing through Docusign or another similar application of the Consent to Join Form mailed by the FLSA Collective Member to the Claims Administrator shall be deemed the exclusive means for determining whether an FLSA Collective Member timely submitted his/her Consent to Join Form. Any Claimant who seeks to challenge a denial of payment under this Settlement based on the untimeliness of his/her Consent to Join Form must provide the Claims Administrator with the postmark date on his/her Consent to Join Form.

2.4   **Claims Administrator Reporting**. After issuing the Notice and Consent to Join Forms, the Claims Administrator shall provide periodic reports to counsel for the Parties with respect to the numbers and names of individuals submitting timely and valid Consent to Join Forms, deficient Consent to Join Forms, and untimely Consent to Join Forms. Within ten (10) calendar days of the close of the Consent to Join Deadline, the Claims Administrator shall prepare a final list of all Claimants who timely submitted a valid Consent to Join Form, including those whose Consent to Join Forms were accepted in accordance with Section 3.4, together with copies of the applicable Consent to Join Forms, and provide such information and documents to Defense Counsel and Class Counsel. The Claims Administrator will also report to the Defense Counsel and Class Counsel the names of any individuals making or disputing claims, Consent to Join Forms, and reason for rejection, of any untimely, deficient, or disputed claims that are not accepted pursuant to Section 3.4.  Defense Counsel shall not withhold contact information for those individuals who are disputing claims, whose claims were rejected, or whose claims were disputed from Class Counsel and Class Counsel may reach out to such individuals for the purposes and under the terms as described in Section 2.3, herein. The Claims Administrator will update and supplement this information as necessary. The Parties will cooperate to ensure that appropriate consents are filed with the Court for all Claimants.

2.5   **Entry of Judgment**. In their proposed Order Granting Approval, the Parties will request that the Court, among other things, (a) certify the Collective for purposes of settlement only, (b) enter Judgment in accordance with the terms of this Agreement, (c) approve the

Settlement as fair, adequate, reasonable, and binding on Plaintiff and all Claimants, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining Plaintiff and all Claimants from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and Releases.

**2.6     Right to Revoke**. Defendants or Plaintiff have the right to withdraw from the Settlement at any time prior to the entry of the Order Granting Approval if: (a) the terms of this Agreement construed by the Court are materially different from the Parties' Agreement; or (b) one Party materially breaches the Agreement.  Before withdrawing from the Settlement, any Party must give the remaining Parties fourteen (14) days advanced notice of their intent to withdraw, the reasons for their intent to withdraw, and provide the remaining Parties an opportunity to cure any alleged breach of the Agreement before any withdrawal.  If there is a dispute over whether a Party's withdrawal from the settlement is allowed under this provision, then the dispute shall be decided finally by David Calzone, the Mediator serving as an arbitrator on this issue.

**2.7     Effect of Revocation or Failure to Grant Final Approval**. In the event any Party revokes the Settlement pursuant to Section 2.6, (i) this Agreement shall have no force or effect, other than the non-admission provisions in Section 3.11; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the request for conditional certification of the collective shall become null and void, and the request for certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of collective action certification or the merits of Plaintiff' claims or any other issue; and (v) the Litigation will continue as if the Agreement had never been entered.  If this Agreement is revoked at any time, pursuant to Sections 2.6 and/or 2.7 of this Agreement, or otherwise, Defendants agree that they will cooperate with Plaintiff to move the Court for an order resetting the remaining deadlines, including the deadline for Plaintiff's motion for conditional certification.

**3.     SETTLEMENT TERMS**

**3.1     Settlement Payment**.

(A)     Defendants agree to pay a maximum of One Hundred Fifty Thousand Dollars ($150,000) (the "Maximum Settlement Amount"), which shall resolve and satisfy all monetary obligations under this Agreement (except Settlement Administration Expenses), including all attorneys' fees, litigation costs, payments to Claimants, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of any employer's share of payroll taxes as described in Section 3.6), interest, and Service Awards. Other than Silverstar's share of payroll taxes as described in Section 3.6 and the Settlement Administration Expenses, as defined

9

in Section 1.27, Defendants shall not pay more than the Maximum Settlement Amount.

(B)     When and if the Court enters the Order Granting Approval, Defendants shall deposit into the Escrow Account the Maximum Settlement Amount pursuant to the following schedule:

    (1)     Within twenty-one (21) days of the Order Granting Approval Defendant Silverstar will deposit the estimated amount of Administration Costs to the Administrator.  Defendants will inform Class Counsel of the amount deposited;

    (2)     Within thirty (30) days of Order Granting Approval Defendant Silverstar will deposit the amount of Thirty-Seven Thousand Five Hundred and 00/100 ($37,500.00).

    (3)     Within sixty (60) days of Order Granting Approval Defendant Silverstar will deposit the amount of Thirty-Seven Thousand Five Hundred and 00/100 ($37,500.00).

    (4)     Within ninety (90) days of Order Granting Approval Defendant Silverstar will deposit the amount of Thirty-Seven Thousand Five Hundred and 00/100 ($37,500.00).

    (5)     Within one-hundred twenty (120) days of Order Granting Approval Defendant Silverstar will deposit the amount of Thirty-Seven Thousand Five Hundred and 00/100 ($37,500.00), and the employers' share of payroll taxes due on the settlement awards to Class Members.

(C)     Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

(D)     Settlement payments will be made on a claims-made basis only. The Claims Administrator will calculate the final amounts due to each Claimant as the Final Individual Settlement Amount and issue checks payable to the Claimants.

(E)     Within ninety (90) calendar days following the Order Granting Approval, the Claims Administrator will make the following distributions of money from the Escrow Account:

    (1)     Paying Class Counsel Court-approved attorneys' fees, reasonable costs and expenses, as approved by the Court and as described in Section 3.2, which shall not exceed $50,000 of the Maximum Settlement Amount, subject to Court approval.

(F)    Within sixty (60) calendar days following the Consent to Join Deadline, the Claims Administrator will make the following distributions of money from the Escrow Account:

    (1)    Paying the Claims Administrator as described in Section 2.1.

    (2)    Paying Service Awards in the amounts described in Section 3.3, subject to Court approval and provided the recipients have executed their respective releases pursuant to Section 3.8.

    (3)    Paying Claimants their Final Individual Settlement Amounts as described in Section 3.6.

(G)    The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq.*, and will be administered by the Claims Administrator as such.  The Claims Administrator shall apply for an employer identification number ("EIN") for the Escrow Account pursuant to Internal Revenue Service ("IRS") Form SS-4, and in accordance with Treas. Reg. §1.468B-2(k)(4), 26 C.F.R § 1.468B-2(k)(4). With respect to the Escrow Account, the Claims Administrator shall:  (1) calculate, withhold, remit and report each Claimant's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (3) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Stipulation. The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account, which are included in the Settlement Administration Expenses, to be paid by Defendants outside of the Settlement Fund and the Net Settlement Fund. The Parties and the Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in Treas. Reg. §1.468B-1(j)(2)(i), 26 C.F.R §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by Treas. Reg. §1.468B-1(j)(2)(ii), 26 C.F.R §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(E). The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account. The Defendants (or some other person on behalf of the Defendants) shall supply to the Claims Administrator and to the IRS

the statement described in Treas. Reg. §1.468B-3(e)(2), 26 C.F.R §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Defendants (or some other person on behalf of the Defendants) makes a transfer to the Escrow Account.

(H)   The payments pursuant to Section 3.6 shall be considered compensation for disputed unpaid wages, penalties, and interest, as set forth in Section 3.7 during the period of employment or alleged employment or joint employment with any of the Defendants by the Plaintiff and/or Claimants only.

(I)   It is intended that all transfers by Defendants to the Escrow Account will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, 26 U.S.C. Section 461(h)(1), and Treas. Reg. § 1.461-1(a)(2), 26 C.F.R. § 1.461-1(a)(2). As such, Defendants shall not be taxed on any income of the Escrow Account.

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)   Prior to the Court ruling on the Parties' Order Granting Approval, Class Counsel shall petition the Court for attorneys' fees and reimbursement of reasonable litigation costs and expenses from the Settlement Fund of up to $50,000, and Defendants shall take no position on Class Counsel's petition for fees and costs. Defendants shall have no additional liability for attorneys' fees and costs relating to the Litigation, the Settlement, or any claims or theories released by this Settlement.

(B)   The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement.  Attorneys' fees and costs sought by Class Counsel but not awarded shall return to the Net Settlement Fund.

**3.3   Service Award to Plaintiff.** Class Counsel will apply to the Court for the Plaintiff to receive a Service Award from the Settlement Fund for services rendered to the FLSA Collective, not to exceed One Thousand Dollars ($1,000).  Defendants will not oppose such application provided it is made in accordance with the terms of this Stipulation.  The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement. The amount of the Service Award sought but not awarded shall return to the Net Settlement Fund.

**3.4   Untimely, Deficient, or Disputed Claims.** The Claims Administrator shall promptly advise counsel for the Parties of any FLSA Collective Members who file late or deficient claims, who dispute their allocation based on the settlement formula, or who have come

forward as individuals who were not identified as FLSA Collective Members but who seek to participate, and any correspondence must also be sent—via carbon copy over electronic mail—to Class Counsel. Silverstar's personnel records reflecting dates the FLSA Collective Member worked during the Covered Period are presumed to be correct unless that individual submits documents proving otherwise. Defendants shall initially recommend to the Claims Administrator whether such individuals or any others may participate in the Settlement, and whether their allocation based on the settlement formula should be corrected (if applicable). Defendants must inform Class Counsel of their recommendation and reasoning. If Class Counsel does not agree with Defendants' recommendation, the Parties will meet and confer to attempt to resolve the disagreement. If they cannot, the disagreement will be submitted to David Calzone, the Mediator acting as arbitrator. If accepted (by the Claims Administrator or Parties, or through decision of the Mediator acting as arbitrator), such individuals shall be considered Claimants for all purposes under this Agreement. Any FLSA Collective Members whose Consent to Join Forms are accepted or whose allocation is permitted to be increased in accordance with this Section at least seven (7) or more days prior to the distribution of the Final Individual Settlement Amount shall be paid from the Net Settlement Fund and the calculations of the Final Individual Settlement Amount for all other Claimants adjusted as necessary in accordance with Section 3.6(C). Any FLSA Collective Members whose Consent to Join Forms are accepted or whose allocation is permitted to be increased in accordance with this Section after the date that is less than seven (7) days prior to the distribution of the Final Individual Settlement Amount, or after the distribution, shall be paid from the "Unclaimed Funds" as defined herein. Once Unclaimed Funds no longer remain to accept additional claims or adjust allocations, no further claims shall be accepted, or changes to allocations made. In no event shall the acceptance of any Consent to Join Forms or changes to allocations in accordance with this Section result in Defendants being required to pay more than the Maximum Settlement Amount of One Hundred Fifty Thousand Dollars ($150,000).

**3.5    Distribution to Claimants.**

(A)    The Net Settlement Fund shall be the amount of money remaining from the One Hundred Fifty Thousand Dollars ($150,000) Settlement Fund after deducting (a) attorneys' fees and costs approved by the Court, pursuant to Section 3.2; and (b) Service Awards approved by the Court pursuant to Section 3.3. Subject to the allocations listed above, the Net Settlement Fund shall be allocated as follows:

   (1)    Each Claimant's Individual Settlement Amount will be calculated as their *pro rata* share of the Net Settlement Fund, based on the Claimant's Total Overtime Hours worked during the relevant time period as a percentage of the total aggregate of all Overtime Hours worked by All FLSA Collective Members during the relevant time period. Each Claimant's Individual Settlement Amount will be calculated per workweek based on the following formulas:

Claimant's Hours = hours worked reflected in Silverstar's data + one additional hour per day actually worked.

Claimant's Total Overtime Hours = Claimant's Hours - 40

All FLSA Collective Members' Hours = hours reflected in Silverstar's data for all FLSA Collective Members + one additional hour per day actually worked, per FLSA Collective Member

All FLSA Collective Members' Overtime Hours = All FLSA Collective Members' Hours - 40

Individual Settlement Amount (weekly) = (Claimant's Total Overtime Hours / All FLSA Collective Members' Overtime Hours) * Net Settlement Fund

Individual Settlement Amount = the aggregate of all weekly amounts.

Each Claimant will receive a payment of their Individual Settlement Amount pursuant to these formulas, or $50.00, whichever is greater. To the extent $50.00 minimum payments create a shortfall based on the above-described calculation, each Claimant's Individual Settlement Payment will be reduced based on the Claimant's *pro rata* share of the Net Settlement Fund.

The intent of this calculation is to allocate the entire amount of the Net Settlement Fund to Claimants' Individual Settlement Amounts.

(B)     If the parties cannot agree on any aspect of the allocation formula, then their dispute shall be decided finally by David Calzone, the Mediator, serving as an arbitrator on this issue. Should it become necessary to engage the Mediator to arbitrate a dispute over the allocation formula, the Parties will split evenly the Mediator's costs.

(C)     Any funds in the Net Settlement Fund that are not claimed ("Unclaimed Funds") shall remain the property of Defendants (except as used to pay the Final Individual Settlement Amount of any FLSA Collective Member whose Consent to Join Form is accepted or whose allocation is permitted to be increased, in accordance with Section 3.4 of the Agreement) and, if Defendants have paid such amounts to the Claims Administrator, such amounts shall be returned to Defendants by the Claims Administrator.

(D)     A Claimant's Final Individual Settlement Amount shall be their Individual Settlement Amount subject to any adjustments under Section 3.4.

(E)     Names of Claimants and their allocation amounts shall be kept strictly confidential by the Claims Administrator, which information will not be disclosed except to Class Counsel and as is necessary to the administration and monitoring

14

of the settlement, including disclosure of the estimated Individual Settlement Amounts calculated for FLSA Collective Members before the Notice is mailed.

(F)   Defendants and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.7, which information shall not be withheld from Class Counsel.

(G)   Claimants will have ninety (90) calendar days after each check date to redeem their settlement payments. If Claimants do not redeem their settlement payment checks within the ninety (90) day period, their settlement checks (the "Unclaimed Checks") will be void and a stop-payment will be placed. In such event, the amounts associated with the Unclaimed Checks shall remain the property of Defendants and shall be returned to Defendants by the Claims Administrator ("Unclaimed Check Funds").  However, if any Claimant contacts Class Counsel or the Claims Administrator requesting a new check within thirty (30) days following when their check becomes void, they will be reissued a check out of the Unclaimed Check Funds.  In the event the Claimant does not redeem a reissued settlement check within sixty (60) days of the date of reissue, the check will be void and a stop-payment will be placed.  The reissued Unclaimed checks will become part of the Unclaimed Check Fund.  Claimants who do not redeem their settlement checks shall remain bound by this Settlement and the Release in Section 3.8(A). This Stipulation and the associated Final Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to the Unclaimed Funds or Unclaimed Check Funds, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Stipulation. The outcome of any proceeding related to the distribution of amounts associated with Unclaimed Checks shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement.

(H)   All payments to Claimants made pursuant to this Agreement shall be deemed to be paid to such Claimants solely in the year in which such payments actually are received by the Claimants.

**3.6   Taxability of Settlement Payments.**

(A)   For tax purposes, the payments to Claimants pursuant to Section 3.3 shall be treated as non-wages.

(B)   Within twenty (20) calendar days following the Claims Form Deadline, Plaintiff shall provide the Claims Administrator with a duly completed IRS Form W-9 or applicable IRS Form W-8 together with any other documentation and information requested by the Claims Administrator in connection with the Claims Administrator's tax reporting obligations under the Code. Plaintiff understands that in the event valid U.S. tax forms or other required supporting documentation are not provided to the Claims Administrator, the Claims Administrator may be

required to withhold tax from payments made pursuant to this Agreement. The Claims Administrator shall report payments to Plaintiff and Claimants on the applicable IRS Form 1099 as required by the Code.

(C)     For tax purposes, the payments to Plaintiff and Claimants pursuant to Section 3.6 shall be allocated as follows:  unpaid wages (50% of each settlement payment), and liquidated damages and interest (50% of each settlement payment). Defendants shall cooperate with the Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages and shall promptly pay such amounts to the QSF. Defendants will be solely responsible for paying the employer's share of payroll taxes. The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the Escrow Account or the Defendants as required by applicable law.

(D)     Payments treated as wages pursuant to Sections 3.7(C) shall be made subject to applicable withholding of the employees' share of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the FICA tax, and shall be reported by the QSF to the IRS and the payee under the payee's name and social security number on an IRS Form W-2.

(E)     Within twenty (20) calendar days following the Order Granting Approval, Class Counsel shall provide the Claims Administrator with a duly completed IRS Form W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Claims Administrator on the applicable IRS Form 1099 as required by the Code and shall be made without withholding, provided the Claims Administrator has timely received a duly completed Form W-9 from Class Counsel.

(F)     As to the payments reported as non-wage income, Plaintiff and Claimants agree to indemnify and hold harmless Defendants and Releasees for any taxes, penalties, interest or other amounts due or owing by the Plaintiff and Claimants on such 1099 payments. Other than the standard withholdings from the wage portion of the Individual Settlement Payments, as set forth above, and as required by law, Defendants and the Claims Administrator will not make from the payment to each Plaintiff or Claimant any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Plaintiff or Claimants shall not create any credit or otherwise affect the calculation of any deferred

16

compensation, benefit, pension, or other compensation or benefit plan provided by Defendants.

(G)     Each individual Plaintiff and Claimant will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Agreement (other than FICA and any federal and state unemployment taxes specified in Section 3.6, and the employer and employee's share of payroll taxes withhold pursuant to Section 3.6). Plaintiff acknowledges and agrees that he has not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

(H)     The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

## 3.7   Release.

(A)     **Release of Claims by Plaintiff.** To the maximum extent permitted by law, the Plaintiff generally release the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Releasees Plaintiff and his heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that he or she has or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to relating to his or her employment (or alleged employment or joint employment) or termination of employment with any of the Defendants or Releasees, including, but not limited to, claims arising under the Americans With Disabilities Act, the Age Discrimination in Employment Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) of the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, the Elliott-Larsen Civil Rights Act, Michigan Persons With Disabilities Civil Rights Act, Michigan Equal Pay Law, Michigan Whistleblower's Protection Act, Michigan Minimum Wage Law of 1964, Michigan Payment of Wages and Fringe Benefits Law, Sales Representatives Commission Act, if applicable, Michigan WARN Laws, Bullard-Plawecki Employee Right to Know Act, Social Security Number Privacy Act, ; Internet Privacy Protection Act, Michigan Occupational Safety and Health Act, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of

17

breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the Effective Date; provided, however, that Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Plaintiff does not release any claim for breach of the terms of the Agreement.

This Settlement is intended to include in its effect all claims identified in this Section 3.8(A), including claims that Plaintiff does not know or suspect to exist in his favor against Releasees as of the Effective Date. Plaintiff agrees and acknowledges that he has had the opportunity to seek the advice of counsel, and that this is a knowing and voluntary waiver. Plaintiff shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he may otherwise have had relating to the claims identified in this Section 3.8(A).

Plaintiff further agrees and acknowledges that he has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to him as set forth in this Agreement are related to sexual harassment or sexual abuse.

(B)  **Release of Claims by Claimants.** Upon the entry of the Order Granting Approval, each Claimant, on his or her behalf, and on behalf of his or her respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, further shall fully release and discharge Releasees of and from any and all federal, state, local, and common law wage and hour claims (including, but not limited to, all claims that were asserted in the Complaint in the Litigation, docket entry 10) arising from his or her employment (or alleged employment or joint employment) with any of the Releasees, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any and all federal, state, local, and common law wage and hour claims, including FLSA claims (including but not limited to claims under 29 U.S.C. § 206, 207, 211(c) and 215(a)) and unjust enrichment claims, and those arising under Michigan Law, as well as liquidated damages, that accrued or accrue prior to the Effective Date, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium

pay, interest, and/or penalties, claims under the ERISA that are related to or derivative of the claims released in this Section 3.8(B), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law wage and hour claims.

This Settlement is intended to include in its effect all claims identified in this Section 3.8(B), including wage and hour claims that each Claimant does not know or suspect to exist in his or her favor against Releasees as of the Effective Date. Claimants agree and acknowledge that they have had the opportunity to seek the advice of counsel, and this shall be deemed a knowing and voluntary waiver. Claimants shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 3.8(B).

(C)   Plaintiff hereby agrees that he will shall not seek and hereby waives any claim for employment or re-employment (as a full-time or part-time employee) or assignment or work (as a temporary worker, independent contractor or consultant) or, in the event of a merger or acquisition, continued employment or assignment or work or any other position in which he receives payment either directly or indirectly from any of the Releasees, including any Amazon or Amazon-affiliated entity, and that his General Release shall be a complete bar to any such application, employment, continued employment, re-employment, or work.

(D)   Nothing in this Release shall prohibit or restrict Plaintiff, Claimants, or Releasees, from:  (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the EEOC, the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB"),  Department of Justice ("DOJ") or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA") or the "New York Stock Exchange, Inc. ("NYSE"), or any other self-regulatory organization ("SRO"); (ii) reporting to any of the Releasees' management or directors regarding conduct the employee believes to be in violation of the law or prohibits or restricts the employee from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above. Plaintiff and Claimants may also disclose confidential information, including trade secrets, to (a) any government, regulatory or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act") and the rules thereunder, or (b) an attorney in connection with

19

the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act. Plaintiff and Claimants do not need the prior authorization of Defendants to make these disclosures or provide evidence or other information to any government, regulatory, or self-regulatory agency, and Plaintiff and Claimants are not required to notify Defendants that they have done so.

(E)     Plaintiff and Claimants further covenant that they will not participate in any other legal actions against Defendants for claims released by this Settlement, and will not opt-in, will withdraw any opt-in, will dismiss the action or themselves from the action in actions where they are a claimant, plaintiff or appellant, and will opt-out of those actions if they become aware of such actions.

(F)     Plaintiff certifies that he has returned all property of the Defendants or any Releasees in her possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which she prepared or obtained during the course of his employment, or alleged employment or joint employment, with any of the Defendants with the exception of any personnel, human resources, or pay records provided to him by any of the Defendants.

(G)     **Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiff, on behalf of the FLSA Collective and each Claimant, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants or Releasees for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff, the FLSA Collective, and the Claimants in the Litigation, the Settlement, or any claims being Released by this Stipulation and related papers specific to this Settlement and Litigation, only. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals and/or their representation in the Litigation.

3.8    **Future Inquiries.** It is the Parties' desire that this Agreement be the final resolution of any disputes that were or could have been included in this Litigation. Notwithstanding Section 3.4, and to the extent consistent with Class Counsel's legal and ethical obligations, anyone employed by any of the Releasees as a Non-Exempt Employee who does not participate in the settlement and later contacts Class Counsel expressing interest in pursuing claims, will be presented by Class Counsel to Releasees for settlement consistent with the terms of this Agreement before filing any individual, class, or collective claims, though doing so will not entitle Class Counsel to any additional attorneys' fees or costs. Class Counsel represents that other than Plaintiff and those who have opted into the Litigation, Class Counsel does not have any other current clients who would form part of this purported collective who have wage and hour claims against any of the Releasees. Additionally, Class Counsel is not aware of any individuals who would

20

be part of this collective contemplating wage and hour claims against any of the Releasees.

3.9    **No Assignment.** Class Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

3.10   **Non-Admission.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiff, the FLSA Collective Members, or any other person, and Defendants and Releasees specifically disclaim (i) any liability, culpability, negligence, or wrongdoing toward the Plaintiff, the FLSA Collective Members, or any other person; (ii) that class or collective action certification is appropriate in this or any other matter; or (iii) that Amazon is an employer or joint employer of Plaintiff, FLSA Collective Members, Claimants, or anyone they seek to represent in the Litigation. Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence (i) of liability; (ii) that class or collective action certification is appropriate; or (iii) that Amazon is an employer or joint employer of anyone. There has been no determination by any court as to (i) the merits of the claims asserted by Plaintiff against Defendants; (ii) whether a class or collective should be certified, other than for settlement purposes only; or (ii) whether Amazon is an employer or joint employer of anyone, including Plaintiff, FLSA Collective Members, or Claimants.

3.11   **Non-Disparagement.**  Plaintiff agrees not to make disparaging comments relating to Defendants' compensation of him.

3.12   **Liquidated Damages for Breach.** In the event of a breach by Plaintiff of the terms of Section 3.11, Plaintiff agrees that Defendants shall be entitled to liquidated damages in an amount equal to all payments made to that individual under this Agreement. Plaintiff agrees that a breach of Section 3.11 constitutes a breach of this Agreement and that it would be impossible or impracticable to compute the actual damages resulting from such breach, and the liquidated damages amount set forth in this Agreement is reasonable in light of the anticipated damage Defendants would suffer from a breach of Section 3.11. Plaintiff agrees that the liquidated damages provision is in addition to, and not in lieu of, any rights, damages, or remedies that Defendants may have available pursuant to federal, state, or local law.

3.13   **Non-Interference With Settlement.** Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Plaintiff, Claimants, and anyone acting on behalf of them shall be barred and enjoined from: (a) further prosecution of the Litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate in a class or collective action basis any

action, claim or proceeding against Defendants in any forum in which any of the claims subject to the Settlement (and specific to the FLSA Collective) are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

**3.14    Returns and/or Destruction of Confidential Settlement Materials.** Plaintiff and Class Counsel agree to return and/or destroy all documents and materials designated as "Confidential" pursuant to the Federal Rule of Evidence 408 or produced to them in connection with settlement negotiations in the Litigation.

**3.15    Miscellaneous.**

(A)    **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)    **Binding Effect.** This Agreement shall be binding upon the Parties and Class Counsel, with respect to Plaintiff and the Claimants, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(D)    **Severability.** Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

(E)    **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(F)    **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(G) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(H) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Michigan, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(I) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(J) **When Agreement Becomes Effective.** Except for provisions of this Agreement requiring any party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

(K) **Facsimile/Electronic Signatures.** Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(L) **Extensions of Time.** If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for Defendants shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

(M) **Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

(N) **Third Party Beneficiaries.** The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement

23

is not designed to and does not create any third party beneficiaries other than third parties that are identified as Releasees as defined in Section 1.27.

**NAMED PLAINTIFF:**

DATED: _____, 2018          By: _____
                                            Aaron Smith

**DEFENDANTS:**

                                       HOWARD & HOWARD ATTORNEYS

DATED: November 15, 2018               By: /s/ Daniel L. Villaire  (w/ Permission) _____
                                            On Behalf of Silverstar, LTD
                                       *Attorneys for Silverstar, LTD*

                                       MORGAN, LEWIS & BOCKIUS LLP

DATED: November 15, 2018               By: /s/ Meredith E. Riccio (w/ Permission) _____
                                            On Behalf of Amazon.com LLC and
                                            Amazon.com Services, Inc.
                                       *Attorneys for Amazon.com LLC, and Amazon.com
                                       Services, Inc.*

**CLASS COUNSEL AS TO FORM
AND CONTENT:**

                                       DICELLO LEVITT & CASEY LLC

DATED: November 15, 2018               By: /s/ Laura E. Reasons _____

                                       *Attorneys for Plaintiff and the Settlement Class*

DocuSign Envelope ID: 0B47A5A8-A585-4477-B088-3D7ECFC505E2

is not designed to and does not create any third party beneficiaries other than third parties that are identified as Releasees as defined in Section 1.27.

**NAMED PLAINTIFF:**

DATED: ___11/15/2018___, 2018        By: _____
                                         Aaron Smith

**DEFENDANTS:**

                                     HOWARD & HOWARD ATTORNEYS

DATED: _____, 2018           By: _____
                                         On Behalf of Silverstar, LTD
                                         *Attorneys for Silverstar, LTD*

                                     MORGAN, LEWIS & BOCKIUS LLP

DATED: _____, 2018           By: _____
                                         On Behalf of Amazon.com LLC and
                                         Amazon.com Services, Inc.
                                         *Attorneys for Amazon.com LLC, and Amazon.com*
                                         *Services, Inc.*

**CLASS COUNSEL AS TO FORM
AND CONTENT:**

                                     DICELLO LEVITT & CASEY LLC

DATED: _____, 2018           By: _____

                                     *Attorneys for Plaintiff and the Settlement Class*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AARON SMITH, individually and on
behalf of all similarly situated individuals,

               Plaintiff,

     v.                               Case No. 2:18-cv-10501-DML-RSW

SILVERSTAR DELIVERY, LTD.,          Hon. David M. Lawson
AMAZON.COM, LLC, and AMAZON.COM
SERVICES, INC.,                     Magistrate Judge R. Steven Whalen

             Defendants.

## [PROPOSED] ORDER

Aaron Smith ("Plaintiff"), on behalf of himself and all others similarly situated ("FLSA Collective Members") has filed an Unopposed Motion for Approval of Collective Action Settlement and Plaintiff's Attorneys' Fees and Costs ("Motion"). After reviewing the Motion, together with the Joint Stipulation of Settlement and Release (the "Agreement"), the proposed Notice to FLSA Collective Members, and the proposed Consent to Join Form, the Court finds and orders as follows:

1.      The settlement memorialized in the Agreement is fair, reasonable, and adequate. It is the result of arms'-length negotiations between experienced attorneys who are familiar with FLSA collective litigation in general, and with the legal and factual issues of this case in particular.

2.      The Court has considered the pleadings, papers, and arguments made by the Parties in support of the Motion and finds that the following FLSA Collective should be conditionally certified for purposes of settlement only:

All individuals, including Plaintiff, employed by Silverstar as delivery drivers who delivered packages to Amazon's customers in Michigan and who worked during the time

1

period between three years from the date of when the individual opted into the lawsuit or October 6, 2016, whichever date is earlier, through January 24, 2018.

3.      The Court approves, as to form and content, the proposed Notice to FLSA Collective Members.   The Court finds that the procedures for notifying FLSA Collective Members about the settlement as described in the Agreement provide the best notice practicable under the circumstances.   The court approves the notice program as set forth in the Agreement, including the timing and method of providing notice.

4.      The Parties are ordered to carry out the settlement according to the terms of the Agreement.

5.      The Court approves Plaintiff's counsels' fees and costs in the amount of $50,000 as set forth in the Agreement, finding that such fees and costs are fair and reasonable; and

6.      The case is dismissed without prejudice, to convert to dismissal with prejudice in six months, each party to bear its own fees and costs except as otherwise provided in the Agreement and by this Order.

**SO ORDERED**

Dated: _____


                                        Honorable David M. Lawson
                                        United States District Court Judge

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **AARON SMITH**, on behalf of himself and all similarly situated individuals,<br><br>        Plaintiff,<br><br>                v.<br><br>**SILVERSTAR DELIVERY, LTD.**,<br>**AMAZON.COM, LLC**, and<br>**AMAZON.COM SERVICES, INC.**,<br><br>        Defendants. | Case No. 2:18-cv-10501-DML-RSW<br><br>Judge David M. Lawson<br><br>Magistrate Judge R. Steven Whalen<br><br><br>**JURY DEMAND** |

<u>**NOTICE TO POTENTIAL PLAINTIFFS OF COLLECTIVE ACTION SETTLEMENT**</u>

**The Honorable M. Lawson, United State District Court Judge, has authorized this Notice and its contents.**

TO:        All individuals employed by Silverstar as delivery drivers who delivered packages to Amazon's customers in Michigan and who worked during the time period between October 6, 2016 and January 24, 2018.

**Please read this Notice carefully.  It relates to a Collective Action Settlement of litigation.  If you are an FLSA Collective Member, it contains important information as to your rights.**

**1.   WHAT IS THIS NOTICE ABOUT?**

This Notice is to tell you about the Settlement of a collective action lawsuit that was filed against Silverstar Delivery, Ltd., Amazon.com, LLC, and Amazon.com Services, Inc. ("Defendants").  This is <u>not</u> a notice of a lawsuit <u>against</u> you.  A Federal Court has authorized this Notice.

**2.   WHAT IS THE LITIGATION ABOUT?**

On February 12, 2018, a collective action lawsuit was filed in the U.S. District Court for the Eastern District of Michigan.  The case is titled *Smith, et al. v. Silverstar, et al.*, Case No. 2:18-cv-10501-DML-RSW.  Plaintiff alleged that he and similarly situated employees were not paid for hours worked in excess of forty hours per week at time and a half their regular rate of pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Defendants denied Plaintiff's claims throughout the litigation.

### 3.   WHY DID I GET THIS NOTICE?

You received this Notice because you have been identified as a person in the Collective (the class of individuals entitled to recover under the Settlement), defined as:

> All individuals employed by Silverstar as delivery drivers who delivered packages to Amazon's customers in Michigan and who worked during the time period between October 6, 2016 and January 24, 2018.

If you received this Notice, you are eligible to participate in the Settlement and may be eligible for compensation as described herein.

### 4.   WHAT IS THE "SETTLEMENT" AND HOW WAS IT AGREED UPON?

The Settlement is a compromise of Plaintiff's claims in this litigation and is not to be construed as an admission of liability on the part of Defendants. The Court has granted approval of the Settlement. The Settlement includes a procedure for eligible persons to receive their share of the Settlement Fund. Plaintiff believes that the claims asserted in the Litigation have merit. Defendants do not believe that the claims asserted in the Litigation have merit. There has been no determination by any court, administrative agency, or other tribunal as to the truth or validity of the factual allegations made in this Litigation. Substantial amounts of time, energy, and other resources have been devoted by the Parties in prosecuting and in defending the Litigation. Unless there is a settlement, that Litigation will continue. In settlement negotiations, the Parties have taken into account the uncertainty of the outcome and the risk of litigation. In light of these factors, the Parties believe that the Settlement is the best way to resolve the Litigation while minimizing further expenditures. The Parties and their attorneys believe that the Settlement is fair, reasonable, and adequate, and in the best interests of all Parties, including the FLSA Collective.

### 5.   WHAT ARE THE TERMS OF THE SETTLEMENT

Defendant Silverstar will pay a Settlement Amount of $150,000.00 to resolve Plaintiff's unpaid overtime pay claims in this Lawsuit as described in the Agreement. Each FLSA Collective Member shall be allocated a proportionate share of the Settlement Fund after the Settlement Fund has been reduced by: (1) $1,000.00 for a service award to the Plaintiff for helping to litigate and settle this lawsuit; and (2) $50,000.00, as approved and ordered by the Court, as payment for court approved attorneys' fees and reasonable costs.  Defendant Silverstar will separately pay the administration costs of this settlement outside of the Settlement Fund. The Settlement Fund as reduced by the foregoing amounts is referred to in this Notice as the "Net Settlement Fund."

### 6.   WHAT AM I ENTITLED TO RECOVER UNDER THE SETTLEMENT?

Each FLSA Collective Member who returns a valid and timely consent to join form to become a Claimant ("Claimant") will receive an Individual Settlement Payment from the Net Settlement Fund consisting of allegedly owed unpaid overtimes wages, plus liquidated damages.  Individual Settlement Payments will be calculated for each Claimant based on their actual hours worked during the relevant time period.  Each Claimant will receive the greater of:  (a) their proportionate amount of the Net Settlement Fund based on their hours worked; or (b) a minimum settlement payment of $50.00.  Your

anticipated Individual Settlement Payment is shown on your Notice.  This is an estimate and is subject to change.

One-half of each Individual Settlement Payment will be considered wages and will be reported as such on an IRS Form W-2.  Appropriate withholdings will be deducted.  The other half of each Individual Settlement Payment will be considered non-wages, including liquidated damages and interest and will be reported as such on an IRS Form 1099.

Individual Settlement Payment checks will become void after 90 calendar days.  However, Claimants whose checks become void may request one new check within 30 days, which will become void 60 calendar days after reissue.

### 7.  HOW DO I RECEIVE MY INDIVIDUAL SETTLEMENT PAYMENT?

You must complete, sign, and return the enclosed Consent to Join form ("Consent") to partake in the settlement.  **The Court has set _____ as the deadline by which all Consents must be postmarked or transmitted electronically.**  However, if your notice packet was returned as undeliverable, you have until the later of _____ or 35 days after your Notice packet is re-mailed to return your Consent.

### 8.  AM I REQUIRED TO PARTICIPATE IN THE SETTLEMENT?

No.  You are not required to join the settlement or to take any action unless you want to. If you do not join, you will not be entitled to an Individual Settlement Payment.  You will also not be bound by the judgment in the case.

### 9.  WHAT RIGHTS AM I GIVING UP IF I PARTICIPATE IN THE SETTLEMENT?

If you join the Settlement by returning a timely and valid Consent, a check for your Individual Settlement Amount will be mailed to you and you will release claims you may have against the Defendants as follows:  You will release on your own behalf, and on behalf of your respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, and further shall fully release and discharge Releasees of and from any and all federal, state, local, and common law wage and hour claims (including, but not limited to, all claims that were asserted in the Complaint in the Litigation, docket entry 10) arising from your employment (or alleged employment or joint employment) with any of the Releasees, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any and all federal, state, local, and common law wage and hour claims, including FLSA claims (including but not limited to claims under 29 U.S.C. § 206, 207, 211(c) and 215(a)) and unjust enrichment claims, and those arising under Michigan Law, as well as liquidated damages, that accrued or accrue prior to the Effective Date, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the ERISA that are related to or derivative of the claims released in this Section 3.8(B), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law wage and hour claims.

This Settlement is intended to include in its effect all claims identified in Section 3.8(B) of the Agreement, including wage and hour claims that you do not know or suspect to exist in your favor against Releasees as of the Effective Date.   By participating in the Settlement, you agree and acknowledge that they have had the opportunity to seek the advice of counsel, and you shall be deemed to provide a knowing and voluntary waiver. You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified in this Section 3.8(B) of the Agreement.

### 10. HOW WILL THE LAWYERS FOR PLAINTIFF AND CLAIMANTS PAID?

Subject to Court approval, Plaintiff's Counsel will receive $50,000.00 of the Settlement Fund, as approved by the Court, for all past and future attorneys' fees and reasonable costs incurred or that will be incurred in this Litigation through final approval of the Settlement as set for in the Agreement.

### 11.  CAN I REVIEW A COPY OF AGREEMENT OR OTHER PAPERS THAT WERE FILED WITH THE COURT?

Yes.  You may contact the Settlement Administrator to review a copy of the Agreement.  You may also contact Plaintiff's Counsel to review copies of the settlement papers filed with the Court.

| Claims Administrator: | Plaintiff's Counsel: | |
|---|---|---|
| **RG/2 Claims** | Amy E. Keller | Kenneth P. Abbarno |
| P.O. Box 59479 | Laura E. Reasons | Mark M. Abramowitz |
| Philadelphia, PA 19102-9479 | **DiCello Levitt & Casey** | **DiCello Levitt & Casey** |
| info@rg2claims.com | Ten North Dearborn St. | 7556 Mentor Ave. |
| 1-866-742-4955 | Eleventh Floor | Mentor, Ohio 44060 |
| | Chicago, Illinois 60602 | Tel:  (440) 953-8888 |
| | Tel:  (312) 214-7900 | kabbarno@dlcfirm.com |
| | akeller@dlcfirm.com | mabramowitz@dlcfirm.com |
| | lreasons@dlcfirm.com | |

If you join the settlement by returning a valid and timely Consent, you will be represented by Plaintiff's Counsel.

All inquiries regarding the Settlement should be directed to Plaintiff's Counsel or the Settlement Administrator.  **Please do not contact the Clerk of the Court or the Judge with Inquiries about this Settlement.**

# EXHIBIT C

CONFIDENTIAL
## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**AARON SMITH**, individually and on behalf of all similarly situated individuals,

      Plaintiff,

         v.

**SILVERSTAR DELIVERY, LTD., AMAZON.COM, LLC**, and **AMAZON.COM SERVICES, INC.**,

      Defendants.

Case No. 2:18-cv-10501-DML-RSW

Hon. David M. Lawson
Magistrate Judge R. Steven Whalen

## CONSENT TO JOIN FORM

[BARCODE]

**Claim ID: XYZ0123456**

[Collective Member Name]
[Mailing Address 1]
[Mailing Address 2]
[City, State ZIP]

      I, the undersigned, hereby acknowledge that I have received and read the Notice to Potential Plaintiffs of Collective Action Settlement (the "Notice") in the above-referenced action (the "Litigation"). I hereby consent to join or opt in to this Litigation and agree to be bound by the terms of the Court-approved settlement of this Litigation, as described in the Notice. I understand that the Joint Stipulation of Settlement and Release ("Agreement") sets out further terms of the settlement and that I may request a copy of the Agreement from the Claims Administrator, which is explained to me in the Notice. In exchange for a payment which I understand will be made to me pursuant to the Court-approved settlement in this Litigation (as described in the Notice and Agreement), I hereby agree not to sue the Releasees (as described in the Notice and Agreement) for any claims that are released (as described in the Notice and Agreement) as covered by the Court-approved settlement of this Litigation. I hereby acknowledge and agree that I am releasing and waiving all such released claims against the named Defendants in the above-referenced action, and all such Releasees in this Litigation.

      By signing and submitting this Consent to Join Form, I hereby authorize the Parties (as defined in the Notice and Agreement) to release to the Claims Administrator all necessary personal or private information about me, including all information on my IRS Form W-2 or W-9, for the limited purpose of processing the settlement.

Date: _____ Signed: _____

The address stated above is the address that we have for mailing your payment under the settlement as described in the Notice. Please make any address corrections below:

_____
First Name                             MI                 Last Name

_____
Current Mailing Address                       Apt #/Unit

_____
City                                 State               Zip Code

CONFIDENTIAL

CONFIDENTIAL

**THIS FORM MUST BE RETURNED TO THE CLAIMS ADMINISTRATOR AT THE ADDRESS BELOW AND MUST BE POSTMARKED NO LATER THAN [MONTH/DAY], 2018.**

      **Smith FLSA Settlement Claims Administrator**
      **c/o**
      **Address**
      **City, State Zip Code**